UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, ANNUITY AND APPRENTICESHIP,
SKILL IMPROVEMENT AND SAFETY FUNDS,

                       Plaintiffs,

                       -against-

NUS CONSTRACTING, INC. d/b/a NUS
CONTRACTING CO.,

                       Defendant.
------------------------------------------------------------X

REPORT AND
RECOMMENDATION
17 CV 5037 (RJD) (CLP)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 11 2018 ★
BROOKLYN OFFICE

[Handwritten: 9/10/18 Adopted without objections, and without qualification. Clerk to enter judgment. So ordered. s/ RJD USDJ]

**POLLAK**, United States Magistrate Judge:

On August 25, 2017, plaintiffs Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity, and Apprenticeship, Skill Improvement and Safety Funds (the "Funds") commenced this action against defendant NUS Constracting Inc. d/b/a NUS Contracting Co. ("NUS"), seeking to collect delinquent contributions and statutory damages, pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132, 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. An Amended Complaint was filed on October 26, 2017. Despite proper service of the Summons and Amended Complaint,[1] defendant has failed to answer or otherwise appear in this action.

On November 28, 2017, the Clerk of Court entered default as to NUS, and thereafter

---

[1] According to Declaration of Nicole Marimon, dated December 1, 2018, ECF No. 20 ("Marimon Decl."), defendant NUS was served with a copy of the Summons and Amended Complaint by service on the Secretary of State of New York on October 26, 2017, in accordance with Fed. R. Civ. P. 4(h)(1)(b) and New York Business Corporation Law § 304(a). (Marimon Decl. ¶ 4, Ex. C).

1

plaintiffs filed their motion for default judgment on December 1, 2017. On February 8, 2018, the Honorable Raymond J. Dearie referred the motion for default judgment to the undersigned to prepare a Report and Recommendation and, if necessary, to conduct an inquest.

For the reasons set forth below, the Court respectfully recommends that the Funds' motion for default judgment be granted and that judgment enter in the total amount of $29,546.94, as described below.

## FACTUAL BACKGROUND

According to the Complaint, plaintiffs are trustees of multiemployer labor-management trust funds organized and operated in accordance with Section 302(c) of the LMRA, 29 U.S.C. § 186(c). (Compl.[2] ¶¶ 1, 4). The Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and are administered at 17-20 Whitestone Expressway, Suite 200, Whitestone, N.Y. (Id.) Plaintiffs allege that defendant NUS is a New York corporation with its principal place of business located at 49 Parkville, Apt. B6, in Brooklyn, N.Y. (Id. ¶ 5). Plaintiffs allege that NUS was a party to or manifested an intention to be bound by a collective bargaining agreement ("CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union"), which required defendant to make contributions to the Funds in connection with all work performed within the trade and geographical jurisdiction of the Union ("Covered Work"). (Id. ¶¶ 6, 8).

The CBA requires NUS to report the number of hours of Covered Work performed by each employee and to make contributions to the Funds calculated based on the number of hours of such Covered Work performed. (Id. ¶¶ 16, 17). Plaintiffs allege that based on remittance

---

[2] Citations to "Compl." refer to the Amended Complaint, filed on October 26, 2017, ECF No. 10.

reports submitted by NUS, NUS owes contributions to the Funds in the amount of $8,265 for Covered Work performed between November 2016 and January 2017. (Id. ¶ 17). In addition, plaintiffs allege that NUS owes $546 in unpaid union assessments for that same period. (Id.) Plaintiffs further allege that NUS failed to report the number of hours of Covered Work for the period from February 2017 through June 2017. (Id.)

Under the CBA—as well as under Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145, Section 301 of the LMRA, 29 U.S.C. § 185, and the Trust Agreements that are incorporated into the CBA—the employer is liable to the Funds for contributions in connection with all Covered Worked performed from November 2016 through June 2017, as well as for union assessments for that same period. (Id. ¶ 20). Pursuant to the CBA and Trust Agreements, if the employer fails to pay contributions when they become due, the employer is liable to the Funds for interest on the unpaid contributions at the rate of 10%, liquidated damages of 20% of the principal owed, and attorneys' fees and costs. (Id. ¶¶ 9, 10, 14, 20).

## DISCUSSION

### A. Default Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by recording a notation of the party's default on the docket maintained by the Clerk. See id.; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may

3

enter a default judgment. See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that default judgment is an extreme remedy, and therefore should be entered only as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). Although the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that district courts must balance that interest with the responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts should be resolved in favor of the defaulting party. Id. Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded adequately in the complaint, thereby placing defendants on notice of the relief sought, see Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for

entering default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, for the purposes of an inquest, the Court accepts as true all factual allegations in the complaint, except those relating to damages, and the "plaintiff is entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

Thus, here, plaintiffs bear the burden of demonstrating the extent of their damages as to each element of the award they seek. In support of their request for damages, plaintiffs have submitted sworn declarations from Keith Loscalzo, Joseph Montelle, and Nicole Marimon. The Court makes its recommendation based upon the ample documentation submitted by plaintiffs, and finds there is no need to hold an inquest hearing.[3]

---

[3] On February 8, 2018, the Court issued an Order directing defendant to submit its papers

## B. Unpaid Contributions

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145. Courts in this circuit have recognized that Section 1145 establishes the elements necessary to make out a claim for failure to pay contributions. See, e.g., Trustees of Local 813 Ins. Trust Fund v. Freedom Demolition, No. 13 CV 2701, 2014 WL 5305983, at *2 (E.D.N.Y. Oct. 15, 2014) (noting that Section 1145 "establishe[s] the elements required to state a claim for failure to pay contributions"). Such an action may be brought by a fiduciary to recover the unpaid contributions, interest on the unpaid contributions, and liquidated damages as specified by the subject plan. 29 U.S.C. § 1132(g)(2).

Here, the plaintiffs are Trustees of multi-employer labor-management trust funds organized under the LMRA, which qualify as employee benefit funds as defined by ERISA. (Compl. ¶ 4). Defendant was an employer as defined by ERISA and was required to make contributions to the Fund on behalf of its employees. (See Id. ¶¶ 6, 8-11).

Plaintiffs have submitted the Declaration of Keith Loscalzo in Support of Default Judgment, dated November 27, 2017 and filed on December 1, 2017. (See generally Loscalzo Decl., Dec. 1, 2017, ECF No. 18). Mr. Loscalzo is an officer of the Union and has submitted copies of an Affidavit of Project Labor Agreement (the "P.S. 95 Affidavit") for work to be performed at P.S. 95 in Brooklyn (the "P.S. 95 Project"). (Loscalzo Decl. ¶¶ 3, 5, Ex. A). The

---

in opposition to plaintiffs' request for damages, or to file a request for a hearing, by March 12, 2018. (See Order at 1-2, Feb. 8, 2018, ECF No. 22). Despite proper service of the Order by plaintiffs, defendant did not request a hearing or otherwise respond as Ordered. (See, e.g., Pls.' Letter at 1, Mar. 5, 2018, ECF No. 24).

P.S. 95 Affidavit bound NUS to the provisions of the Project Labor Agreement on behalf of the New York City School Construction Authority ("PLA") in connection with all work performed on the P.S. 95 Project. (Id., Ex. B). The PLA provides that "[t]his Agreement, together with the local Collective Bargaining Agreements appended hereto as Schedule A, represents the complete understanding of all signatories and supersedes any national agreement, local agreement, or other collective bargaining agreement which would otherwise apply to this Program Work." (Id., Ex. B, Art. 2, § 4). The PLA further provides that the "Contractors agree to pay timely contributions on behalf of all employees covered by the Agreement to those established jointly trusted employee benefit funds designated in Schedule A." (Id., Ex. B, Art. 11,§ 2(A)).

According to Mr. Loscalzo, the relevant CBA, under which NUS was to make contributions to the Funds, is attached as Exhibit C to his Declaration. (Id. ¶ 8). Under the CBA, NUS was obligated to pay contributions to the Funds in accordance with the rates set forth in the CBA. (Id. ¶ 9, Exs. C, D). Under the CBA, contributions were to be paid no later than thirty-five days after the end of the month when the work was performed. (Id. ¶ 11). The CBA also requires employers to remit dues check-offs and contributions to the Union in connection with Covered Work. (Id. ¶¶ 12, 13).

According to the Declaration of Joseph Montelle, Administrator of the Funds, defendant NUS failed to remit contributions to the Funds for work performed from November 2016 through January 2017 in the amount of $16,644.45. (Montelle Decl.[4] ¶ 8). NUS also failed to pay dues check-offs and other contributions to the Union in the amount of $961.35 for the same time period. (Id.) In addition, according to the Montelle Declaration, NUS failed to submit

---

[4] Citations to "Montelle Decl." refer to the Declaration of Joseph Montelle in Support of Plaintiffs' Motion for Default Judgment, dated November 27, 2017 and filed on December 1, 2017, ECF No. 19.

remittance reports and contributions for the period from February 2017 through August 2017. (Id. ¶ 9).

Having reviewed the records and other documents provided by plaintiffs, including the sworn Declarations of Mr. Loscalzo and Mr. Montelle, and the records of contributions due and owing, the Court finds that plaintiffs have adequately stated a claim for delinquent contributions under ERISA and respectfully recommends that plaintiffs be awarded $16,644.45 in unpaid contributions and $961.35 in dues check offs and other contributions.

## C. Interest

Pursuant to ERISA and the terms of the CBA, plaintiffs are entitled to an award of interest on delinquent contributions. 29 U.S.C. § 1132(g)(2). Here, the CBA provides for interest to be calculated at the rate of 10% per annum. (Montelle Decl. ¶ 6, Ex. B). Based on the calculations provided by plaintiffs (see Montelle Decl., Ex. E), as of November 27, 2017, when the papers in support of the motion for default judgment were prepared, defendant owed $1,382.00 in interest calculated at the rate of 10% per year. In addition, plaintiffs are entitled to receive additional interest calculated at the rate of 10% per annum from November 28, 2017 through the date of judgment at a per diem rate of $4.56. As of the date of this Report and Recommendation, August 6, 2018, plaintiffs are owed interest in the total amount of $2,526.59.

Accordingly, it is respectfully recommended that plaintiffs be awarded a total of $2,526.59 in interest through August 6, 2018, and an additional $4.56 per day thereafter until the date of judgment.

## D. Liquidated Damages

Plaintiffs also seek an award of liquidated damages. ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . .

liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Here, the CBA provides that the Funds are entitled to an award of liquidated damages equal to 20% of the unpaid contributions owed, which is greater than the interest on the unpaid contributions. (Montelle Decl. ¶ 7 & Ex. B).

Accordingly, the Court respectfully recommends that plaintiffs be awarded $3,328.89 in liquidated damages.

**E. Attorneys' Fees and Costs**

Plaintiffs seek an award of $6,740 in attorneys' fees and $544.66 in costs incurred in pursuing this action, pursuant to 29 U.S.C. § 1132(g)(2)(D). (Marimon Decl.[5] ¶ 10).

In support of these requests, plaintiffs have submitted the Declaration of Ms. Marimon, who is an associate of the firm of Virginia and Ambinder LLP (the "Firm"), which has represented plaintiffs in this action. In accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm has submitted contemporaneous billing records setting forth the amount of time spent rendering services, the dates when such services were rendered, the hourly rate at which the services were charged, the name of the attorney or paralegal rendering services, and a description of the services performed. (See Marimon Decl., Ex. E).

Courts employ the "lodestar" method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n

---

[5] Citations to "Marimon Decl." refer to the Declaration of Nicole Marimon, Esq., filed on December 1, 2017, ECF No. 20.

v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain factors. Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *7; see Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

1. Reasonable Hourly Rate

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 183-84. To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. The Second Circuit has considered the following factors to guide the inquiry as to what constitutes a reasonable hourly rate:

> 1) The time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorneys' customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied these factors when awarding attorney's fees. See Demirovic v. Ortega, No. 15 CV 327, 2018 WL 1935981, at *10 (E.D.N.Y. Apr. 24, 2018); Kindle v. Dejana, 308 F. Supp. 3d 698, 703 (E.D.N.Y. 2018); Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co., 270 F. Supp. 3d 593, 617 (E.D.N.Y. 2017); Flores v. Mamma

Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 313 (E.D.N.Y. 2015); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010).

In awarding attorneys' fees, the Court is mindful of the fact that default actions are relatively simple legal matters, but also takes account of the attorneys' degree of skill and the Court's own experience dealing with similar actions.

According to the Marimon Declaration, two attorneys worked on this case, along with two legal assistants. (Marimon Decl. ¶¶ 8-9; see id., Ex. E). Ms. Marimon is a 2014 law school graduate and an associate with the Firm who has handled the prosecution of several ERISA collection actions. (Id. ¶ 8). Paige Davis, the other attorney who worked on this matter, graduated from law school in 2016 and is also an associate with the Firm. (Id. ¶ 9). Both associates billed their time at the rate of $250.00 per hour. (Id. ¶¶ 8-9).

The Court finds the rates requested for the associates are well within the range of rates awarded in this district for counsel in ERISA matters. See, e.g., Trustees of Local 522 Pension Fund v. Consolidated Cos., No. 17 CV 1991, 2018 WL 2078117, at *9-10 (E.D.N.Y. Feb. 6, 2018) (approving rates of $350 for partners and $300 for experienced associates), R&R adopted, 2018 WL 1521775 (E.D.N.Y. Mar. 27, 2018); Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co., 270 F. Supp. 3d at 623 (approving rates of $350 and $300 for partners and $200 for an associate in ERISA default action); Trustees of Local 522 Pension Fund v. Bayway Lumber and Home Center, No. 16 CV 5286, 2017 WL 9511077, at *6 (E.D.N.Y. July 25, 2017) (recommending rates of $325 and $300, respectively, for partners in ERISA default), R&R adopted, 2017 WL 4075182 (E.D.N.Y. Sept. 14, 2017); Bakery & Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc., No. 09 CV 3068, 2011 WL 6130975, at *5 (E.D.N.Y. Nov. 10, 2011) (finding a partner's hourly rate of

$330 to be reasonable for ERISA litigation); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011) (approving rates of $390 per hour for work by partner and $280 per hour for work by associate in ERISA litigation, including summary judgment motion), report and recommendation adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011); Finkel v. Fred Todino & Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of $370 per hour for partner and $275 per hour for associate in ERISA withdrawal liability case, but noting that these rates were on the "higher end" for the Eastern District); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 372348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a partner's rate of $390 per hour and associate's rate of $280 per hour reasonable in ERISA litigation).

Thus, the Court finds that the rate of $250.00 per hour is reasonable for the time spent by Ms. Marimon and Ms. Davis on this matter.

As for the $80 per hour requested for the work performed by the legal assistants in this case, the average compensation rate for non-attorney support staff is $90 per hour in this district. See, e.g., Ferrara v. PI Trucking Corp., No. 11 CV 0661, 2011 WL 7091562, at *4 (E.D.N.Y. Dec. 20, 2011) (noting that "the majority of the ERISA default cases in this District favor somewhat lower hourly rates . . . of $90 for the paralegal"); Finkel v. Alltek Sec. Sys. Group., Inc., No. 10 CV 4487, 2011 WL 4543498, at *10 (E.D.N.Y. Aug. 26, 2011), report and recommendation adopted as modified, 2011 WL 4543495 (E.D.N.Y. Sept. 29, 2011) (approving hourly rate of $85-90 for work performed by a paralegal). Thus, the Court finds that the requested hourly rate of $80 per hour is reasonable for the time spent by the legal assistants in this case.

2. Reasonable Number of Hours

The next step in awarding attorney's fees is determining the reasonableness of the number of hours expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, the court should "exclude excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)). If the court finds that "some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because those requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorney's fees because the attorney's litigation of the suit made apparent his "lack of experience" and duplicative entries); Quinn v. Nassau Cty. Police Dept., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fee by 20% and the other's by 30% for unnecessary and redundant time expenditures); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Here, the Firm has submitted contemporaneous billing records setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were

charged, and the names of the individuals who provided these services, along with a description of the services performed. (See Marimon Decl., Ex. E). In total, counsel seeks to recover for 20.5 hours of time spent by the lawyers on this matter and an additional 5.2 hours of paralegal time. Having reviewed the billing records provided, the Court finds that the number of hours billed are not objectively unreasonable. As such, the Court finds no need to reduce the hours for which plaintiffs seek fees.

Accordingly, the Court respectfully recommends that plaintiffs be awarded a total of $5,541.00 in attorneys' fees.

3. Costs

Under ERISA, plaintiffs who prevail in an enforcement action are entitled to recover reasonable costs. 29 U.S.C. § 1132(g)(2)(D). Filing fees and service of process fees are generally recoverable. See 28 U.S.C. § 1920; Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. 2010).

Here, plaintiffs seek an award of costs in the amount of $544.66, consisting of a filing fee of $400.00, $70.00 for service of process fees, $1.80 in postage, and $2.86 for what appear to be charges for research services. (See Marimon Decl. ¶¶ 10-11 & Exs. D &E). In support of this request, plaintiffs have attached the invoice showing the fees for service of process. (Id.) In addition, the Court takes judicial notice of the filing fee in this district. See Phillip Morris USA v. Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (taking judicial notice of the filing fee for this court); Joe Hand Promotions v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (same). Although it is dubious that fees for electronic research remain compensable, the fees requested here are minimal and consistent with precedent in this Circuit. See Dallas v. Goldberg, No. 95 CV 9076, 2003 WL 22872325, at *2 (S.D.N.Y. Dec. 5, 2003)

(citing Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1995)).

Since plaintiffs have supplied adequate documentation in support of their requests for costs, the Court respectfully recommends that plaintiffs be awarded costs in the amount of $544.66.

## CONCLUSION

In light of the foregoing, the Court respectfully recommends that plaintiffs' motion be granted and that default judgment enter in favor of plaintiffs in the total amount of $29,546.94, consisting of:

1) $16,644.45 in delinquent contributions;

2) $961.35 in dues check offs and other contributions;

3) $2,526.59 in interest on the delinquent contributions through August 6, 2018, with an addition $4.56 per day thereafter until judgment enters;

4) $3,328.89 in liquidated damages;

5) $5,541.00 in attorneys' fees; and

6) $544.66 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiffs' counsel is Ordered to serve a copy of this Report and Recommendation on

defendant NUS Constracting, Inc. by mail to its last known address.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 6, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York